## PORTER *v.* GOSSELL.

### Opinion delivered April 13, 1914.

1. SALE OF CHATTELS—CONDITIONAL ACCEPTANCE.—Where defendant offered by letter to sell a car of oats to plaintiff, upon condition that plaintiff would take the city scale weights at the place of shipment; plaintiff's reply that he would accept the oats if a sworn weight certificate was furnished, held not to constitute an unconditional acceptance. (Page 384.)

2. CONTRACTS—OFFER AND ACCEPTANCE—RIGHT TO WITHDRAW.—An offer to sell may be withdrawn, at any time before it is unconditionally accepted. (Page 384.)

Appeal from Pulaski Circuit Court, Second Division; *Guy Fulk,* Judge; reversed.

*Mehaffy, Reid & Mehaffy,* for appellant.

The correspondence passing in this case did not constitute a contract, because there was no meeting of the minds of the parties, which is an essential element. Elliott on Contracts, Vol. 1, p. 25; 113 S. W. 703; 18 N. W. 172; 101 U. S. 822; 134 S. W. 942; 54 Pac. 101; 130 S. W. 541.

*Mann & Shofner,* for appellees.

The order of appellant was accepted as made. "If an offer is accepted as made the acceptance is not conditional and does not vary from the offer because of inquiries whether the offerer will change his terms, or as to future acts for the expression of hope or suggestion, etc." 9 Cyc. 269; 61 N. W. 384 (Iowa); 66 Pac. 1033 (Kan.); 88 Ark. 363; 46 Ark. 129; 98 Ark. 421.

McCULLOCH, C. J. Appellee instituted this action below against appellant to recover damages resulting from appellant's failure or refusal to perform his alleged

contract whereby he sold and undertook to deliver to appellee a carload of oats.

The case was tried before the court sitting as a jury, and the only question we have to determine is whether the testimony, viewing it in the light most favorable to appellee, is sufficient to sustain the finding of the court.

Appellant resided at Stuttgart, Arkansas, and appellee at Little Rock, the negotiations between the parties being conducted entirely by letters and telegrams.

A contract may be entered into by that method and all of the correspondence may be read together for the purpose of establishing the contract. *Mann* v. *Urquhart,* 89 Ark. 239.

"When parties conduct a negotiation through the mail," said this court in *Kempner* v. *Cohn,* 47 Ark. 519, "a contract is completed the moment a letter accepting the offer is mailed, provided it be done with due diligence after receipt of the letter containing the proposal and before any intimation is received that the offer is withdrawn.

Appellant was engaged in the business of selling hay and lumber, and the negotiations between him and appellee concerning the sale of the oats grew out of correspondence about the sale of hay.

The first communication on the subject was that of appellee in a letter dated June 23, 1911, concerning the purchase of hay, and adding the following inquiry about purchase of a carload of oats:

"Do you know of any one that has any oats which they might offer in carload lots in your section of the country? If so, I would be glad to have you write me what you think they can be bought at, or would like to have you give me their names, and I will write them concerning the same."

Appellant replied by letter on the same day as follows:

"Yours of 23d to hand and noted. I have no oats on hand but can quote you for immediate delivery, carload lots, bulk oats, at forty-two cents, or, sacked, forty-

five cents, f. o. b. tracks here. This is a close price, and if.you are in the market for any oats now, would be glad to hear from you right away so that we may be looking out for them."

That letter constituted a proposal to enter into a contract with respect to the sale of a carload of oats at the price and terms therein named. Appellee replied on June 26 as follows:

"Your favor of the 23d at hand, and would say if the oats you quote are No. 3 or better red oats, destination weights and grades guaranteed, I could use a car at forty-two cents, f. o. b. your track, immediate shipment. I think the price you name is just a little bit high, though, and, in fact, have been offered No. 2 oats from Oklahoma on the same basis. I wish you would please write or wire me immediately upon receipt of this if you will ship car as above."

It will be observed that this letter did not constitute an unconditional acceptance and was not so regarded by appellee. He stated the condition that if the oats quoted were of a certain grade and the weights were guaranteed at destination, he would purchase a car at forty-two cents. The letter shows that he did not intend it as an acceptance of appellant's offer, but intended it as a counter proposition, for he requested an immediate response by letter or wire from appellant, indicating whether the latter waws willing to accede to those terms. The negotiations had not then proceeded to a contract, for the minds of the parties had not yet met.

In *Emerson* v. *Stevens Gro. Co.*, 95 Ark. 421, we said:

"There can be no binding contract of sale until the parties have agreed to the same proposition which is the subject of the contract. There must be an offer to sell upon the one hand and an acceptance of the same offer before it can be said that the contract of sale has been consummated. Mere negotiations for entering into the contract will not suffice, but the proposition to which the negotiations lead for the agreement must be finally assented to by both parties. So, in determining whether

or not a contract of sale has been made, the material inquiry is, did the minds of the parties meet and did they mutually assent to the same thing?" See, also, *Cage* v. *Black,* 97 Ark. 613, announcing the same principle.

Appellant replied to the last letter above named on June 28, as follows:

"I would not want to load and ship the oats without you would take the city scale weights here. Oats are advancing some, but I can get you a car of bulk oats at forty-two cents, I think, if you will take the city scale weights."

Now, inasmuch as appellee had not accepted the terms of appellant's original proposition, the latter had the right to withdraw from the negotiations entirely or to offer new terms. He did this in the letter just quoted by imposing the condition that city scale weights (meaning, of course, the weights of the city weigher at Stuttgart) must be accepted. It will be observed that appellee had asked that the weights be guaranteed at destination, but in this letter appellant, in substance, declined that offer and substituted the new proposal that the city scale weights should be accepted.

Appellee, on the next day (June 29), replied by wire as follows:

"Your letter. Rush car oats, your city scale weights, affidavit attached, satisfactory."

He followed this up with letter, written on the same day, saying:

"However, as advised you, please furnish me with sworn weight certificate at your end and it will be perfectly satisfactory. I ask this simply because I know party doing the weighing will necessarily be more careful in furnishing sworn certificate."

The case turns on the question whether appellee's letter and telegram constituted an unconditional acceptance of appellant's offer so that the minds of the parties met on the same proposition, or whether they constituted a new offer which required acceptance upon the part of appellant before a contract was established.

We are of the opinion that the letter and telegram were not an acceptance of appellant's offer, but constituted a proposal containing another condition or qualification, namely, that an affidavit of the weigher should be furnished. Now, that was a condition to which appellant was not bound to accede. There having been no unconditional acceptance of his offer, he had the right to recede from the negotiations. The qualification thus imposed by appellee was a material one, for the reason that appellant had no control over the weigher and could not require him to furnish an affidavit. If it had been merely a matter of appellant furnishing his own affidavit as to the weights, the case might be different, but appellee demanded the affidavit of the weigher, a person over whom appellant is not shown to have had any control, and, therefore, it was an important qualification of the terms originally proposed by appellant. It changed the terms, in other words, to the extent that it prevented the minds of the parties from meeting, and the negotiations, therefore, did not result in a contract. *Northwestern Iron Co.* v. *Meade,* 21 Wis. 480; *Eggleston* v. *Wagner,* 46 Mich. 610; *Bolton* v. *Huling,* 195 Ill. 384.

"It is an undeniable principle of the law of contracts," said the Supreme Court of the United States, "that an offer of a bargain by one person to another, imposes no obligation upon the former, until it is accepted by the latter, according to the terms in which the offer was made. Any qualification of, or departure from, those terms, invalidates the offer, unless the same be agreed to by the person who made it. Until the terms of the agreement have received the assent of both parties, the negotiation is open, and imposes no obligation upon either." *Eliason* v. *Henshaw,* 4 Wheat. 225.

Appellant replied to appellee's communication by stating that the party from whom he expected to get the oats had decided not to sell. Appellant in his testimony explained that he was not engaged in the business of handling oats at all, and was conducting negotiations merely as an accommodation for another person. The

negotiations were thus terminated without the parties entering into a binding contract, and there being no contract established between them there is no liability for appellant's refusal to deliver the oats.

The whole transaction being set forth in the correspondence, no useful purpose would be subserved by remanding the case for a new trial. The judgment is, therefore, reversed and the cause dismissed.