HART v. HAMMETT GROCER COMPANY.

Opinion delivered January 28, 1918.

1. CONTRACTS—MAY BE MADE BY CORRESPONDENCE.—Contracts may be made by telegram and letters, and when so evidenced, it is the duty of the trial court to interpret the contract and declare its terms.

2. CONTRACTS—OFFER AND ACCEPTANCE.—After negotiations for the purchase and sale of a car of beans, the following telegrams *held* to constitute an offer and acceptance, and to make a binding contract: "Ship Hammett car CHP two twenty-five delivered immediate confirm." "All right confirm car choice two twenty-five immediate shipment."

3. CONTRACTS—FORMATION.—The above telegrams concerned a shipment of a car of beans, and after sending the telegram of acceptance, the seller wrote a letter of confirmation. *Held*, it was not prejudicial to submit to the jury the issue of whether a contract was made and the terms thereof.

Appeal from Jefferson Circuit Court; *W. B. Sorrells*, Judge; affirmed.

*Rowell & Alexander*, for appellant.

1. No binding contract was ever entered into. The two telegrams were not sufficient and the letter of confirmation did not contain the same terms set out in the offer. The court erred in its instructions and in submitting the case to the jury. The court should have construed the contract. 77 Ark. 261; 89 *Id.* 239; 97 *Id.* 613; 95 *Id.* 421; 121 *Id.* 150; 112 *Id.* 380.

2. Defendant complied with his contract and shipped the car and plaintiff was not entitled to recover. 97 Ark. 613; 9 Cyc. 260.

3. The law with reference to contracts governed by usage and custom is well settled. 106 Ark. 400; 113 *Id.* 556.

*Taylor, Jones & Taylor*, for appellee.

1. The two telegrams and letter constituted a contract. There is no error in the instructions. 111 Ark. 263; Clark & Skyles on Agency, § § 748, 765, 781. "Delivered" means delivered at destination Pine Bluff, Ark.

HUMPHREYS, J. Appellee, a corporation doing a grocery business at Pine Bluff, Ark., instituted suit against Hart Bros., a partnership engaged in the bean business at Saginaw, Mich., appellant being a member thereof, in the Jefferson Circuit Court to recover damages for failure of Hart Bros. to deliver a car of navy beans to appellee in Pine Bluff, under an alleged contract for delivery to appellee in said city at $2.25 per bushel. It was alleged that the price advanced from $2.25 to $3.19 per bushel between the date of purchase and date for delivery.

Appellant denied that the contract of sale provided for delivery in Pine Bluff, but, on the contrary, alleged that it provided for delivery on board cars at the point of shipment; and alleged that the beans were shipped in accordance with the acceptance of the order and rules and regulations of the Michigan Bean Jobbers' Association which governed the shipment; that said rules and regulations were known to all the parties, and, by usage and custom among bankers and wholesale grocers, were understood to mean that the buyer assumed the risk of transportation.

The oral evidence adduced on the part of appellee tended to show that the beans were to be shipped immediately and delivered to the appellee at Pine Bluff; that A. W. Nunn, manager of the Hammett Grocer Company, knew of the existence of the association and that it had rules but was not familiar with the rules or their purposes.

The oral evidence adduced on the part of appellant tended to show that the beans were sold to appellee under the rules and regulations provided by the constitution and by-laws of the Michigan Bean Jobbers' Association, which contained the form of an "Official Sales Contract" required to be used by the members of the association in all purchases and sales of beans in which the following clause appeared:

"Prices named herein include 'Cost and Freight' only. This order is not sold 'Delivered.' Notwithstanding shipped to seller's order, buyer assumes responsibility for delay in transit, upon issuance of Bill of Lading or Carrier's receipt to shipper. Seller is not liable for non-shipment caused by fire, strikes, or unavoidable causes beyond seller's control;" also, that the "Official Sales Contract" was generally used throughout the United States wherever Michigan beans were sold; that when beans were sold and bought under said rules, a delivered price included only the cost and freight to destination, and responsibility of delivery was assumed by the buyer; that the word "delivered" in said rules meant the cost, plus the freight, and was not a guaranty of the delivery of the beans.

The record disclosed by the undisputed evidence that the car of beans was shipped to Pine Bluff by Hart Bros. to its own order with bill of lading and draft attached; that the beans were destroyed en route by fire in a wreck at Niles, Michigan; that the draft was presented and payment refused on account of the failure to deliver the car of beans at Pine Bluff; that Hart Bros. refused to supply another car, claiming that they were exempt from further liability after placing the beans on board the car; that appellant insisted that appellee present a claim to the railroad company covering the loss; that appellee refused and insisted that under the terms of the contract, the loss was appellant's; that after the refusal of appellee to present a claim, appellant presented a claim to the railroad company for the loss and collected the contract price.

It is also undisputed that the Arkansas Brokerage Company sold the car of beans to appellee subject to confirmation by Hart Bros., and that at the instance of appellee, the Arkansas Brokerage Company sent the following telegram to Hart Bros.:

"Pine Bluff, Ark., July 25, 1914.

"Hart Brothers, Saginaw, Mich.

"Ship Hammett car CHP Two Twenty-five delivered immediate confirm.

"Arkansas Brokerage Co."

Hart Bros. responded by telegram as follows:

"Saginaw, July 27, 1914.

"Arkansas Brokerage Company,

"Pine Bluff, Arkansas.

"All right confirm car choice two twenty-five immediate shipment.      "Hart Brothers."

The telegram was followed by a confirmation letter sent to Arkansas Brokerage Company, which is as follows:

"Confirmation of Sale No. 265.      Hart Brothers. Wholesale Shippers, Beans, Hay and Grain.      Saginaw W. S. Michigan, July twenty-seventh, nineteen fourteen. Hammett Grocery Company, Pine Bluff, Arkansas.      We confirm sale made to you this date by Arkansas Brokerage Company.      Two hundred and fifty bags of C. H. P. Pea Beans, Two twenty-five per bushel delivered.      We certify this to be true copy of the original confirmation of sale.      Time of shipment, immediate.      Route M. C. Wabash.      Terms: Michigan Bean Jobbers' Association Rules and Grading on Beans to govern.      Weights guaranteed within one-fourth of one per cent.      Hay.      National Hay Association Rules and Grades to govern.      Weights guaranteed within one per cent.      Grain.      Official Destination Weights and Grades to govern.      Yours truly,

Hart Brothers."

The undisputed evidence also showed that the letters "CHP," used in the first telegram, meant "choice hand picked" navy beans.

The case was sent to the jury to determine under the evidence whether the parties made a contract and whether one of its terms was that the beans should be delivered at Pine Bluff or delivered on board cars at the shipping point.

The jury returned a verdict in favor of appellee for $745.07 and judgment was rendered thereon, from which an appeal has been prosecuted to this court.

It is insisted by appellant, under the facts in this case, that the court erred in refusing to peremptorily instruct a verdict for appellant—

First, because it is said that the two telegrams and confirmation notice did not constitute a contract;

Second, that if they did constitute a contract, it was governed by the rules and regulations of the Michigan Bean Jobbers' Association.

(1) This court is committed to the rule that contracts may be made by telegrams and letters and that when so evidenced, it is the duty of the trial court to interpret the contract and declare its terms. *McDonough* v. *Williams*, 77 Ark. 261; *Mann v. Urquhart*, 89 Ark. 239; *Cage* v. *Black*, 97 Ark. 613; *Porter v. Gossell*, 112 Ark. 380.

(2) Applying this rule to the instant case, the court is of opinion that the two telegrams constituted a valid contract between the parties. The first telegram was an offer on the part of Hammett Grocer Company, through the agency of the Arkansas Brokerage Company, to buy a car of choice hand picked beans from Hart Bros., at $2.25 per bushel, to be delivered to it at Pine Bluff, Arkansas. The second telegram was an unconditional acceptance of the offer by Hart Bros. It is insisted that because the word "delivered" appeared in the first telegram and was omitted from the response message that the offer was declined. The words "all right" and the word "confirm" in the response message indicate acceptance and not rejection. It is said by appellant that the word "delivered" in the first message had reference to the price at Pine Bluff under the interpretation placed upon it by the "official Sales Contract" contained in the rules and regulation of the Michigan Bean Jobbers' Association. If this were the correct interpretation of the word used in the telegrams, then to be consistent, appel-

lant should contend that the price fixed in the response message was a price for the beans at the shipping point. No such claim is made by appellant. As we understand it, appellant does not now claim that the beans were sold at $2.25 per bushel, exclusive of freight charges. This convinces us that the word "delivered," used in the first message, applied to the delivery of the beans and had no application whatever to the price fixed in the message. When both telegrams are read together, the word "delivered" is clearly implied in the response message.

It is insisted, however, that the interpretation placed upon the word "delivered" under the heading "terms" in the letter of confirmation and in the form of the "Official Sales Contract" must, by usage and custom, control the meaning of the word "delivered" in the first telegram. There would be force in this argument if the form of the "Official Sales Contract" had been adopted in the telegrams. The reference to the rules and regulations of the Michigan Bean Jobbers' Association in the letter of confirmation could in no way affect a contract which had been completed by telegram prior to the delivery of the letter. The proof with reference to the usage and custom only goes to the extent of showing that when beans were sold and purchased under the "Official Sales Contract," the special meaning given to the word "delivery" therein should control. The sale in the instant case was made in a different form from the "Official Sales Contract" and was not therefore controlled by it.

(3) Under this view of the law, the trial court committed no prejudicial error in sending the case to the jury to determine whether a contract had been made between the parties and the terms thereof, nor in refusing to give instruction No. 2, requested by appellant, bearing upon the interpretation of the contract by custom and usage.

No reversible error appearing of record, the judgment is affirmed.