MORO SUPPLY COMPANY v. GRIFFIS-NEWBERN COMPANY.

Opinion delivered February 16, 1920.

CONTRACTS—WHEN BINDING.—Defendant wrote plaintiff: "R's balance with you is $122.80. You can make a draft on us for the amount with note attached, and we will honor same, with note transferred to us." Plaintiff accepted by indorsing the note and inclosing it in a letter to defendant, informing it that the mortgage securing the note and the account (making up the $122.80) was on file, and requesting defendant to mail a check covering the same. *Held* there was a complete and binding contract.

Appeal from Lee Circuit Court; *J. M. Jackson,* Judge; reversed.

*Jonas F. Dyson,* for appellant.

The court erred in refusing to direct a verdict for appellant, as appellee promised in writing to pay Russell's account, $122.80. The statute of frauds does not apply, as the promise was in writing and an original and not a collateral undertaking.

*Daggett & Daggett,* for appellee.

The statute of frauds does not enter into this case. The offer made by appellee was not accepted by appellant and no contract resulted because (1) an indebtedness in the amount contracted for was not tendered or delivered; (2) the endorsement was not made prior to the date the offer was rescinded; (3) the note for $5 was not endorsed to appellee; (4) draft was not made with note for $122.80 attached in accordance with the offer made by appellee.

WOOD, J. The appellant instituted this action against the appellee and alleged in his complaint that appellees were indebted to appellant in the sum of $122.80, being the amount of an account which one Charlie Russell owed appellant for cash and supplies furnished him during the year 1917, which account the appellee in writing promised to pay. The appellee denied the allegations of the complaint.

One D. H. Smith testified that he was the president of the appellant, a corporation that was organized and doing business in this State; that appellant furnished one Russell supplies to make a crop for the year 1917, and to secure the amount furnished him Russell executed to the appellant a mortgage on a cow, yearling, and his crop. As a part of the arrangement, Russell executed to the appellant a promissory note for $5. This note and the amount of the account was secured by the mortgage. Appellant had furnished Russell during the year 1917, and on March 4, 1918, he owed appellant on his account a balance of $122.80. Appellant refused to furnish him for the year 1918, and Russell said he would get some one in Marianna to furnish him.

Appellant received from appellee a letter dated March 4, 1918, which reads as follows: "Charles Russell has made arrangements to trade with us, and his balance with you is $122.80. You can make draft on us for the amount with note attached, and we will honor same, with note transferred to us. Yours truly, Griffis-Newbern Co."

Appellant had had no previous conversation with appellee concerning the account. Upon receipt of the above letter appellant endorsed the note and enclosed same in a letter to the appellee, informing appellee that the mortgage securing the note and the account was on file and requesting appellee to mail a check to cover same.

On the 14th of March, 1918, the appellee wrote appellant to the effect that since writing the first letter Russell had made misrepresentations on account of which appellee could not pay to appellant the account of Charles Russell. With this letter appellee returned the note to appellant.

Appellant never received any payment from the appellee and therefore instituted this action.

W. D. Newbern testified that Russell made certain representations to the appellee concerning his stock and the amount that he owed the appellant which induced the appellee to write to appellant the first letter above set

out. In the meantime one Mr. Gresham informed the appellee that Russell was working his land on shares and had no stock. Appellee had received a letter from the appellant which had enclosed only the note of $5. The appellee became suspicious and then wrote the appellant the second letter above referred to. The appellee had already taken a mortgage on the stuff of Charlie Russell before it wrote the appellant the first letter. Charlie Russell informed the appellee as to the amount of his account with the appellant or had the statement of the account with him. The arrangement that appellee had with Russell was to pay his note and account to the appellant and get a mortgage on his stock and crop. Appellee thought the note was secured by the particular stock.

The appellant asked the court to instruct the jury to return a verdict in its favor, which request the court refused. The court, thereupon, instructed the jury to return a verdict in favor of the appellee, which was done. From a judgment rendered in favor of the appellee is this appeal.

The undisputed evidence shows that the appellee promised in writing to pay the appellant the amount of Charles Russell's account, which appellee stated was $122.80. This was in fact the amount of Russell's account with the appellant and is the amount for which the appellant brought this action. Appellant, upon receiving the letter of the appellee promising to pay Russell's account, enclosed the note of Russell for $5 endorsed to the appellee and requested the appellee to send a check.

The only reasonable conclusion that can be drawn from the correspondence between the appellant and the appellee and the testimony, is that the appellee agreed to pay appellant the amount of the account which Charles Russell owed appellant, and that appellant upon such promise accepted same and surrendered to the appellee the note, informing the appellee that the mortgage covering the account was on file.

It was wholly unnecessary for the appellant to inform the appellee in its letter accepting the appellee's

offer to pay off the amount of Russell's account; for appellee's letter stated the correct amount of that account which it assumed to pay. The answer of appellant to that letter surrendering the note, as we construe it, was an unequivocal acceptance of appellee's offer which made the contract complete and binding.

The judgment is, therefore, reversed, and judgment will be entered here for the appellant against the appellee for the amount claimed.