PROCTER & GAMBLE DISTRIBUTING CO. v. D. C. GOFF CO.

Opinion delivered June 4, 1923.

1. CONTRACTS—EVIDENCE.—Contract may be made by telegrams and letters, and, when so evidenced, it is the duty of the trial court to interpret the contract and declare its terms.

2. CONTRACTS—CONSTRUCTION.—Where, after having sold to a wholesale dealer a stock of soap and cooking compounds, including "Flakewhite," the manufacturer decided to change its method of doing business by selling direct to the retail dealers, an agreement by the manufacturer to give the wholesale dealer its disposition of such goods upon being furnished a statement of the amounts and kinds on hand, constituted an agreement to take up all the goods on hand, including "Flakewhite."

3. SALES—CONSTRUCTION OF CONTRACT.—Where, on a sale of goods, the manufacturer allowed the purchaser a discount of two per cent. for cash, on a subsequent repurchase of the goods by the manufacturer at the price of the goods on a certain date, the latter would not be entitled to such cash discount where it refused to take back and pay for a portion of the goods at the agreed price.

4. SALES—AGREEMENT TO REPURCHASE—CONSIDERATION.—Where a manufacturer changed its method of doing business from dealing with jobbers to dealing directly with retail merchants, an agreement by it to repurchase goods previously sold to a wholesale dealer at the price of the goods on a certain date is a valid contract.

Appeal from Sevier Circuit Court; *James S. Steel*, Judge; affirmed.

*E. K. Edwards* and *B. E. Isbell*, for appellant.

The court erred in directing a verdict against appellant. The correspondence, letters and telegrams did not show an agreement on part of appellant to take up or take back the "Flakewhite." Appellee "took it for granted," and the question whether there was such agreement should have been left to the jury. 81 Ark. 337; 89 Ark. 368; 151 Ark. 81. Contract, if one existed, was without mutuality or consideration. 90 Ark. 508. No evidence of a meeting of the minds of the parties in the letters and telegrams. Appellant should have had credit for the $52.17 discount, in any event.

*Lake & Lake,* for appellee.

The verdict was properly directed for appellee. The facts are undisputed. The contract was made by letters and telegrams passing between the parties, and, when so evidenced, it is the duty of the court to interpret the contract and declare its terms. 132 Ark. 197; 125 Ark. 199; 89 Ark. 239; 77 Ark. 261; 128 Ark. 114; 97 Ark. 613; 112 Ark. 380. Consideration sufficient. 13 C. J. 334-5; 96 Ark. 184; 91 Ark. 367; 134 Ark. 543; 101 Ark. 22.

Hart, J. Appellant prosecutes this appeal to reverse a judgment against it in favor of appellee for damages resulting from appellant's failure to perform a contract for the sale to it of certain merchandise by appellee. The appellant, who was the defendant below, is a foreign corporation located at Memphis, Tennessee, engaged in selling at wholesale soaps and cooking fats. The appellee is a corporation located at DeQueen, Ark., and is a jobber engaged in selling soaps, cooking fats, and other merchandise. Appellee was a customer of appellant, and purchased from it a considerable quantity of soaps and cooking fats, which it had on hand on June 30, 1920. Prior to that time appellant had been selling its merchandise through jobbers, and appellee was one of its main customers in this part of the country. On the date above mentioned, appellant changed its method of business and began to sell directly to retailers. Upon learning this fact, appellee wrote to appellant, asking it to take up the merchandise which it had bought from appellant and had on hand.

It is conceded that the appellant agreed to relieve appellee of the stock of soap and Crisco which appellee had bought from it, and that a contract to that effect was entered into by means of certain letters and telegrams between the parties. On the other hand, it is the contention of appellee that appellant also agreed to repurchase the Flakewhite, which is a cooking fat, which appellee had purchased from appellant.

It is well settled in this State that contracts may be made by telegrams and letters, and, when so evidenced, it is the duty of the trial court to interpret the contract and declare its terms. *Hart* v. *Hammett Grocer Co.,* 132 Ark. 199, and cases cited.

This rule is conceded to be the law in this State, and the only issue raised by the appeal is whether or not the contract between the parties is such that the court was warranted in telling the jury, as a matter of law, to return a verdict in favor of appellee. The instruction to return a verdict for appellee was based on the ground that the letters and telegrams on their face showed an absolute agreement on the part of appellant to repurchase the Flakewhite which appellee had on hand on the same terms as it had agreed to repurchase the stock of soap and Crisco that appellee had on hand.

The correspondence between the parties commenced on the 13th of July, 1920, and lasted until the 23rd day of December, 1920, at which time appellant denied that it had offered to relieve appellee of its stock of Flakewhite, and refused to do so.

The letters between the parties are numerous and somewhat lengthy. For this reason it is not practical to set them out in full within the short compass of this opinion. We have reached the conclusion that the circuit court was right in telling the jury, in effect, as a matter of law, that the agreement of appellant to repurchase the stock on hand which appellee had originally purchased from it included the Flakewhite as well as the Crisco and the soaps.

On July 13, 1920, appellee wrote appellant as follows:

"Dear sirs: We have heard rumors that, since you have gone direct to the retail trade with the line of soaps and shortening, that it is your intention to take up jobbers' stocks. We have quite a lot of stock of your soap on hand, and which we bought with the expectation of selling for a profit, and of having your cooperation in

doing so, and we feel that, in justice to us, you should relieve us of the stock of soap and Crisco that we have on hand.  Please advise us at once, and oblige.''

On the 16th day of July, 1920, appellants sent to appellee the following answer:

''Gentlemen:  We acknowledge receipt of your letter of July 13th, in which you request that we relieve you of your stock our brands.  We shall be very glad to adjust the matter, but will ask that you await a visit from one of our representatives before any action is taken. We will have some one call at the earliest possible moment, but we request your indulgence, as it may be a matter of a week or ten days before we are able to have our salesman visit you.  You of course understand that any adjustment made will be on the basis of cost prices as of June 30, 1920.''

On July 28 appellee answered this letter, and notified appellant that its representative had not yet come.  Appellee stated that it had goods of appellant which it was anxious for it to take up, and then enumerated the kind and amount of the goods. The enumeration included certain cases of Crisco, certain cases and drums of Flakewhite, and certain cases of different kinds of soap and washing powder.  Appellee reminded appellant that, when it bought the goods, it received no information whatever that the distribution of the goods would be taken out of the hands of the jobbers, and that it had been an important factor in placing appellant's goods on the market in the town of DeQueen.

Appellant answered this letter, and again told appellee that its representative would soon be there to take up the goods.  Appellant promised appellee in the letter that it should be remitted for these goods at the prices in effect June 30, 1920.  On August 14, 1920, appellee wrote appellant that it would like to know something definite about its intention of taking up the goods in question.  On August 20, 1920, appellee sent to appellant a telegram as follows:

"Are you going to relieve us of stocks of soaps and cooking compounds in your brands? If so, when?"

On August 20 appellant wrote to appellee as follows:

"Gentlemen: In reply to your communication of August 14, we wish to advise that we will give you disposition upon receipt of an up-to-date statement of the merchandise that you have on hand, giving size and the exact number of cases."

Appellee replied to this letter and gave to appellant a complete itemized list of the goods it had on hand. In the list were certain cases of Flakewhite and Crisco, and certain kinds of soaps. Other letters passed between the parties, but we do not deem it necessary to set them out. Appellant finally refused to take back the Flakewhite on the ground that, when it changed its method of doing business, it did not relieve jobbers of cooking fats, and reminded appellee that cooking fats were perishable products.

We think it was too late then for appellant to refuse to take the cases of Flakewhite. On the 28th day of July, 1920, appellee sent to appellant an itemized list of the goods on hand which it had purchased from appellant. This itemized list included the Flakewhite as well as the Crisco and the soaps. This was followed by a telegram on August 20, 1920, asking the direct question if appellant was going to relieve appellee of its stock of soap and cooking compounds. Flakewhite is included in the latter term. Appellant answered this letter by agreeing to give appellee its disposition of the goods upon an up-to-date statement of the amounts and kind on hand. This constituted a binding contract between the parties for the appellant to take up the amount of Flakewhite on hand which appellee had purchased from it, as well as the Crisco and the soap. Appellee included the number of cases of Flakewhite in its itemized list of goods, and appellant agreed to take up all the goods on hand which it had sold to appellee, only insisting on ap-

pellee's giving a detailed statement of the amount and kind of goods on hand.

Appellant paid appellee for all the goods shipped under the agreement, except the Flakewhite, and the court instructed the jury to return a verdict against appellant in favor of appellee in the sum of $815.40. This was the price of the Flakewhite on the date of June 30, 1920.

Appellant insists that, in any event, the judgment should be reversed because it was not allowed the sum of $52.17 which should have been deducted from the amount it was to pay appellee for the goods actually taken back by it. A claim is made for this on the theory that in the original sale of the goods appellant allowed appellee a discount of two per cent. for cash. A sufficient answer to this claim of appellant, however, is that it only paid for part of the goods which it agreed to take back, and absolutely refused to take back and pay for the Flakewhite at the agreed price. Under this state of the record it would not, in any event, be entitled to any discount on the purchase price.

Finally it is insisted by appellant that the contract is void for want of mutuality, and for that reason the judgment should be reversed.

We think that there is nothing in this contention. It appears from the record that appellee had paid appellants for the goods it had purchased from it. When appellant changed its method of doing business from dealing with jobbers to dealing with retail merchants, appellee asked appellant to take back the goods it had on hand which it had purchased from appellant, and appellant agreed to do this at the price of these goods on a certain date, when it should receive an itemized list of such goods. This amounted to a repurchase of the goods by appellant from appellee, and this it had a right to do.

It follows that the judgment will be affirmed.