PEEBLES *v.* SNEED.

4-7321

179 S. W. 2d 156

Opinion delivered March 27, 1944.

*Owen C. Pearce* and *Culbert L. Pearce,* for appellant.

*W. D. Davenport,* for appellee.

Knox, J. Appellant, a real estate broker, seeks a reversal of a decree denying him judgment against appellees, alleged to be due on account of services rendered by him in connection with sale of their home.

On June 4, 1943, appellant wrote the following letter to Mrs. Sneed: "I am wondering if you would not like to sell your home on West Southline Street here in Searcy? Inasmuch as you are now living in Springfield, thought maybe you would sell it, and should you ever come back to Searcy after the war is over, you could build you a home maybe you would like better.

"We have a prospect that is in the market for a home in Searcy, and he is from out of the state. In fact lives in Missouri. I'm going to lose him if I don't find him something nice pretty soon.

"If you and Mr. Sneed care to sell, and will give us a reasonable price on the dwelling here, I believe I can sell it for you at a good price.

"Please let me hear from you. Our commission will be 5 per cent. of the sale. Will appreciate it very much if you will give an immediate reply, as I am anxious to land this prospect before he gets off the proverbial 'line.' Kindest regards."

On June 7, 1943, Mrs. Sneed replied: "Your letter of June 4th received in regards to our home in Searcy.

"I am planning to be in Searcy sometime next week, and will contact you and it may be that I will sell, however we had never thought of selling, for it is a good investment.

"Mr. Sneed is out of town and will be in this weekend and I will talk it over with him, however we would want $4,000 for it, as we had just redecorated it throughout before we left."

On June 19, 1943, Mrs. Sneed again wrote appellant as follows: "It will be the first of July before I can come to Searcy, and if you can sell this man our home for $4,000 go ahead and sell, but please use tact, as I don't want to lose the Blackburns as renters; if I should not sell, and I don't want it listed in paper for sale." Copy

of a letter from appellant to Mrs. Sneed written in reply to her letter of June 19th was introduced in evidence. The date line which was somewhat smeared appeared to be June 20, 1943, but some of the witnesses seemed to think that this was error, and that the letter had in fact been written several days later than June 20th. This letter reads as follows: "Your letter of June 19th received and note it will be July 1st before you will get to Searcy. When you come, would like for you to come around to our office and see us, and list the property here on W. Southline Street with us for sale. I have never seen the dwelling inside, but do not know what it looks like. If it looks as good inside, as it does from the out, I think I can sell it for $4,000.

"We'll be looking for you when you come to Searcy."

Appellant explains that he wrote this last letter because while he had authority to sell the property it was not an exclusive agency, and he wanted appellees to list the property with him on his form, so that he would have an exclusive agency—the witness then said, "I will not put any pressure behind one unless I have it exclusively."

Appellant testified that the man from Missouri referred to in his letter of June 4th was operating a mill at Bradford, Arkansas; that this man did not return to Searcy after appellant received authority to sell, and he therefore could not and did not offer the property to him.

Late in the afternoon of Saturday, July 3rd, Mrs. Aldean Cain, who with her husband resided next door to appellant, saw appellant in his front yard and advised him that they were having to give up the home which they were renting, and asked if he had any suitable property for rent or sale. Appellant told her that he could sell her the Sneed property for $4,000; that Mrs. Sneed would be down the next week, at which time he would show the property to Mrs. Cain and talk to her further relative to the proposed sale. At her request he promised her that he would not show the property to anyone else until she had first seen it.

Unknown to appellant, Mr. and Mrs. Sneed were in fact in Searcy at the very time appellant was talking to Mrs. Cain, they having arrived the day before. On the morning following the day of her conversation with appellant, Mrs. Cain attended church services, where she encountered Mr. and Mrs. Sneed. Impulsively she told them that she had heard their house was for sale and that she was interested in it. Arrangements were made for an inspection of the property, and on Tuesday, July 6th, an agreement was reached for the sale and purchase of such property for $4,250. During the course of the negotiations, Mrs. Cain asked if the property had been listed with a real estate dealer, and Mrs. Sneed assured her that it had not. Mrs. Sneed testified that she and her husband arrived in Searcy Friday, July 2d; that she saw appellant for the first time at his office between 10:30 and 11:30 a. m. Tuesday, July 6th, at which time appellant tried to get her to list the property with him, and she refused. She testified that the acceptance on the part of Mr. and Mrs. Cain was conditioned on their being able to negotiate a loan, which was not assured until July 24th, and that for this reason and also because she regarded it as a matter concerning which she was entitled to no information she did not advise appellant relative to the sale to the Cains. Appellant admits that Mrs. Sneed was in his office on the date mentioned, but denies that there was any conversation between them relative to listing the home for sale. Mrs. Sneed, however, is corroborated, in part at least, by a Mr. Bloodworth, who was in the office at the time and overheard the conversation.

Mrs. Cain testified, and in fact it appears to be accepted by all parties, that her first and only information that the property was for sale came through her conversation with appellant.

Neither appellant nor Mrs. Cain advised appellees, or either of them, that appellant had told Mrs. Cain the property was for sale, and it is undisputed that appellees did not know that appellant had communicated any in-

formation concerning the property to Mrs. Cain until after the sale to the Cains had been consummated.

While the decree dismissing appellant's complaint contains no findings of facts, or conclusions of law, it is apparent from the findings that the trial court based its decision upon the ground that there was no contract of employment between the parties by which appellant was authorized to offer the property to Mrs. Cain, or to anyone other than the man from Missouri, referred to in appellant's letter dated June 4, 1943. Appellees based their defense on this contention in the trial court, and takes the same position here.

At 12 C. J. S., "Brokers," § 60, p. 134 *et seq.*, we find the following statement: "The right of a broker to recover a commission or other remuneration for his services must be predicated on a contractual relation, he must have been employed to negotiate the contract or transaction in connection with which his services were rendered, and the employment must have been by the person from whom the commission is claimed or by some one acting for him. Where there is no employment or binding contract for the payment of commission and the broker acts as a mere volunteer, he is not entitled to compensation for his services, although such services are the efficient cause of bringing the parties together and result in a sale or other contract between them."

The statement of the text writer above quoted is in accord with decisions of this court. *Vanemburg* v. *Duffey*, 177 Ark. 663, 7 S. W. 2d 336; *Nickel* v. *Dashko*, 174 Ark. 818, 298 S. W. 204.

The limits of appellant's authority to offer the property depends on the construction placed upon the language contained in letters passing between him and Mrs. Sneed, particularly that contained in his letter of June 4th, and hers of June 19th.

At 8 Am. Jur., "Brokers," § 18, p. 999, we find the following statement: "The general principles of law governing the construction of contracts generally are applicable to the construction of a broker's contract of

employment. Such a contract should be construed as a whole, and in a reasonable manner. Any doubt, however, as to the broker's powers thereunder should be resolved against him." A real estate broker's authority is limited and is such only as is specifically conferred on him either expressly or by necessary implication. 12 C. J. S., "Brokers," § 20, p. 58; *Swift* v. *Erwin*, 104 Ark. 459, 148 S. W. 267.

While it is true that appellant in his letter to Mrs. Sneed, dated June 4th, requested general authority to act as broker for her in the sale of the property he pointed out that he had in view as a prospective purchaser a certain man from Missouri. In her letter of June 19th she said, "If you can sell this man our home for $4,000, go ahead and sell." The trial court construed this to confer on appellant authority to offer the property to the man from Missouri and to no one else. In other words, the trial court held that appellant failed to show that he had authority from appellees to offer the property to Mrs. Cain; and failing to establish a contract clothing him with such authority he could not recover a commission, even though his actions were the procuring cause of the sale; that in his dealings with Mrs. Cain appellant was acting as a volunteer.

Appellant contends that such construction of the letters is not justified because, he says, the real interest of appellees was the purchase price of $4,000; that it was immaterial to them who paid this amount so long as they received it. Counsel for appellees point out that Mrs. Sneed explained in her letter that she did not want to lose her renters in case a sale was not made, and she did not want them inconvenienced, as they doubtless would be if the property was listed and shown generally. The question is not whether appellant's authority was fixed within reasonable bounds, for unquestionably appellees had the right to limit the extent of such authority within such confines as they chose. The real question is what is the extent of the authority granted? Or stated more definitely did Mrs. Sneed's letter give appellant authority to offer the property to Mrs. Cain? If he was

unauthorized to enter into negotiations with Mrs. Cain, then there would be no liability on the part of appellees to compensate him for his services unless they had later ratified his unauthorized acts. This rule is stated at 8 Am. Jur., p. 1093, as follows: "Where a broker enters into a contract that is not in accordance with his employer's instructions, the latter is under no liability to compensate him for his services unless such unauthorized acts of the agent are ratified by the principal. The fact that the contract negotiated is more advantageous than that which the broker was authorized to enter into, does not alter the operation of the rule or do away with the necessity of ratification on the part of the employer." Of course, there is no contention here that there was ratification by appellees of the acts of appellant in offering the property to Mrs. Cain, it being acknowledged that appellees did not know of appellant's conversation with Mrs. Cain until after they had disposed of the property.

In the case of *Breen* v. *Rives,* 44 N. Y. S. 672, 16 App. Div. 632, the Supreme Court of New York, App. Div., held that authority given to a broker to sell to a particular named person did not authorize the sale to another person.

In view of the fact that a real estate broker's authority is limited and is such only as is specifically conferred, either expressly or by necessary implication, and in view of the further fact that in determining the extent of the authority the contract of employment must be strictly construed and all doubt relative to such authority resolved against the broker, we are of the opinion that the trial court correctly construed the letters passing between appellant and Mrs. Sneed as constituting a contract of limited employment by which appellant was given authority to offer this property for sale to the prospective purchaser mentioned in his letter of June 4, but that he was not authorized, expressly or by implication, to offer the property to any other purchaser.

The decree is, therefore, affirmed.

HOLT, J., (dissenting). The essential facts appear not to be in dispute. The question is the correct application of the law to these facts. Appellant's contract of employment is evidenced by the letters set out in the majority opinion. The construction to be placed upon this contract is for the court.

"The terms of the contract of sale were evidenced by the letters and telegrams, and it was the duty of the court to construe the contract and declare its terms to the jury." *McDonough* v. *Williams,* 77 Ark. 261, 92 S. W. 783, 8 L. R. A., N. S. 452, 7 Ann. Cas. 276. "This court is committed to the rule that contracts may be made by telegrams and letters and that when so evidenced, it is the duty of the trial court to interpret the contract and declare its terms." *Hart* v. *Hammett Grocer Co.,* 132 Ark. 197, 200 S. W. 795.

According to the majority view, the contract limited, or conditioned, appellant's authority to sell the Sneed property in question to "the man from Missouri." In appellant's letter to Mrs. Sneed on June 4, he says: "I am wondering if you would not like to sell your home on West Southline Street here in Searcy? Inasmuch as you are now living in Springfield, thought maybe you would sell it, and should you ever come back to Searcy after the war is over, you could build you a home maybe you would like better. We have a prospect that is in the market for a home in Searcy, and he is from out of the state. . . . If you and Mr. Sneed care to sell, and will give us a reasonable price on the dwelling here, I believe I can sell it for you at a good price, etc."

Mrs. Sneed answered this letter on June 7, 1943, in which she informed appellant that they had no thought of selling the property in question, "for it is a good investment." However, she further stated that her husband was out of town, but that on his return she would talk it over with him and that they would want $4,000 for it. Later, on June 19, Mrs. Sneed again wrote appellant: "It will be the first of July before I can come to Searcy, and if you can sell this man our home for

$4,000 go ahead and sell, but please use tact, as I don't want to loose the Blackburns as rentors; if I should not sell, and I don't want it listed in paper for sale."

It seems to me that the plain and fair interpretation to be placed on these letters is that the Sneeds authorized appellant to sell the property for $4,000. While appellant mentioned that he had a prospect from Missouri, yet he did not give the name of this party to appellee. There is nothing in the letters to indicate that appellees were only interested in selling to a man from the state of Missouri, whom they did not know. Certainly appellees did not intend to exclude purchasers from Arkansas, because they, themselves, concluded a sale with Arkansas buyers, who had begun negotiations with appellant.

It seems to me quite clear that all appellees required of appellant was to produce a purchaser who was able, ready and willing to pay $4,000 for the property, and this it is admitted appellant did.

The testimony is positive that appellant talked with Mrs. Cain about this property on July 3, and that appellant assured Mrs. Cain that he would give her the first opportunity to see and buy it. The next day Mrs. Cain saw the appellees at church and told them that she understood that their property was for sale, and that she wanted to buy it. This information she got from appellant. Appellees admitted that they talked to Mrs. Cain at church on Sunday, July 4, that they showed Mrs. Cain the property that evening, and again on Monday, and that they closed the deal on Tuesday. It thus appears to be undisputed that the Cains learned that this property was for sale through appellant, and that thereafter appellees sold the property to them, appellant's prospects, who were at all times ready, willing and able to purchase.

In these circumstances, the law is well settled that it is immaterial that the Sneeds sold the property and concluded the bargain. In *Hight* v. *Marshall,* 124 Ark. 512, 187 S. W. 433, this court said: "It is contended

also that appellee ought not, in any view of the testimony, to be permitted to recover for the reason that appellant sold the land in good faith to Brett without knowledge of appellee's previous negotiations with Brett. The law on this subject is, however, settled by the decision of this court against appellant's contention, in *Stiewel* v. *Lally*, 89 Ark. 195, 115 S. W. 1134, where we held that if real estate brokers procured a sale to be made without notice of revocation of authority, they were entitled to recover commission, even though the sale was made directly by the owner to a purchaser procured by the brokers, and that their 'right to recover commission did not depend upon knowledge upon the part of the owner that they had brought about the sale.' "

In *Scott* v. *Patterson & Parker*, 53 Ark. 49, 13 S. W. 419, it is said: "The law is well settled that in a suit by a real estate agent for the amount of his commissions it is immaterial that the owner sold the property and concluded the bargain. If, after the property is placed in the agent's hands, the sale is brought about or procured by his advertisements and exertions, he will be entitled to his commissions. Or if the agent introduces the purchaser or discloses his name to the owner, and through such introduction or disclosure, negotiations are begun, and the sale of the property is effected, the agent is entitled to his commissions, though the sale may be made by the owner."

In *Hunton* v. *Marshall*, 76 Ark. 375, 88 S. W. 963, this court said: "It is not disputed that plaintiff was a real estate agent, that defendant listed her property with him for sale at the stipulated price of $2,250, and that he at once opened up the first negotiations with Crawford, who finally became the purchaser. . . . We think it is quite clear that appellee was the procuring cause of the sale under his employment for that purpose, and is entitled to the commission, though the sale was made and consummated by the owner." See, also, *Pinkerton* v. *Hudson*, 87 Ark. 506, 113 S. W. 35.

It seems to me that the contract here, under which appellant was working, contained no limitations that would preclude him from selling the property to any reputable purchaser who was ready, able and willing to buy the property and pay cash for same. I think any other construction would be strained and unreasonable.

It is my view that the decree should be reversed, and a judgment here entered in favor of appellant for $200, interest and costs.