BOWEN *v.* RIGGAN.

4-9335                                                  235 S. W. 2d 967

Opinion delivered January 22, 1951.

Rehearing denied February 19, 1951.

*Norton & Norton,* for appellant.

*E. J. Butler,* for appellee.

GRIFFIN SMITH, Chief Justice. In December, 1948, Eugene Woods, Sr., contracted to sell L. L. Riggan a farm near Shell Lake in St. Francis County for $45,000, payable $500 January 1, 1949, $4,500 a year later, and the remainder at $5,000 per year. All deferred payments were due January 1 of successive years, and the notes drew interest at four percent. A deed was placed in escrow, to be delivered when $10,000 had been paid and when appellee's three-year lease contract running through 1951 had been performed. The balance of $35,000 was to be secured by deed of trust in Woods' favor. While the contract is silent regarding the buyer's right to pay installments before maturity, each of the notes reads ''on or before.''

Appellant Bowen is a Memphis realtor authorized to do business in Arkansas. He received information that Riggan wished to sell his farm, and procured a listing at $55,000. Shortly thereafter C. I. Shade, representing Bowen, drove to Riggan's home and told him that an offer on the place had been procured, but that certain details were to be disposed of. Riggan went to Bowen's office and was told that Dr. N. B. Hendrix would buy the farm for $50,000. Shade testified that Riggan deliberated a few minutes, made some calculations, then said in effect that the offer was satisfactory. Dr. Hendrix, however, did not want to be bound on installment payments that could not be discharged at his convenience. Riggan thought the obligations were payable ''on or before.'' It was Shade's understanding that all details were agreed upon unless it should be found that the notes could not be paid before maturity. In that event Woods was to be consulted.

A tentative agreement in contract form was written. Shade testified that Riggan was willing to sign, but that Bowen thought it would not be a good policy for the seller to sign before the buyer did. At Bowen's suggestion the memorandum was marked o. k. and initialed by Riggan.

It was Riggan's contention that he did not intend to be bound until Woods' wishes in the matter had been ascertained, hence he declined to affix his signature to the proposed contract, and this, he thought, was understood by all who were present.

Dr. Hendrix proposed to pay $30,000 in cash and to execute a mortgage for the balance, with interest at four percent. The Doctor was willing to purchase merchandise in a store or commissary operated by Riggan on the farm. Riggan was informed that Bowen's commission would be $2,500. According to Bowen, Riggan said, "That would give me [a profit] of $2,500, the crop I have harvested this year, and what I have made out of the store: that is all right."

A check for $5,000 was given by Dr. Hendrix when the o.k.'d document was presented to him with the explanation by Bowen that the only matter to be determined was whether the Riggan notes in Wood's favor could be paid before maturity. Riggan just as earnestly insists that in addition to this factor it was verbally agreed that the negotiations were not to be regarded as final until Woods' consent had been procured. L. L. Vandervort, also connected with the Bowen agency, heard the conversations and testified that the only matter for future determination was the right to pay Riggan's notes. No question is made regarding the Hendrix check.

Two days later Riggan called Bowen by telephone. He said that in making the contract he had overlooked his obligation to pay Woods about $1,800 in interest, and the negotiations should be considered as ended. Bowen protested, insisting there was a valid contract. Riggan did not, according to Bowen's testimony, undertake to abandon the sale because Woods had failed to consent. The sole reason was that the interest item had been overlooked, although he did mention that Woods did not "entirely approve" the deal.

On November 17th Norton & Norton, attorneys, wrote Riggan that Bowen had consulted them regarding his commission. The client had been advised that payment could

be enforced if a purchaser ready, willing, and able to perform had been procured. Appellee thinks the rule of *Peebles* v. *Sneed*, 207 Ark. 1, 179 S. W. 2d 156, is applicable because oral conditions were interposed and the writing in its unsigned form was not the entire contract.

If the issue rested upon this point alone we would agree that there was substantial testimony for a jury finding that full accord was dependent upon Woods' approval and that it was not given.

When the Norton law firm wrote Riggan that Bowen claimed his commission, Riggan asked legal advice of Rieves & Smith. In the meantime Dr. Hendrix employed Mann & McCulloch, who in a letter of November 18th informed Riggan that the Doctor would insist upon his contractual rights. In an effort to reach a full understanding, Riggan attended a conference in West Memphis Dec. 1, where the disputed issues were discussed with Rieves, Vandervort, N. M. Norton, and Smith. Bowen suggested the possibility'of getting Dr. Hendrix to pay $1,000 for fixtures in the store as a means of enabling Riggan to realize a margin of profit after payment of interest. He also agreed to cut his commission $500. This would give Riggan $1,500 more than the former negotiations called for; and, since the interest in exact figures was $1,780, these concessions would lack but $280 of taking care of the obligation Bowen had been led to believe was bothering Riggan. The conference of Dec. 1st lasted about an hour. Bowen then went to Memphis and secured Dr. Hendrix' approval of the new terms. The Doctor, however, had been negotiating for a farm manager and insisted that he should have a reasonably prompt compliance upon Riggan's part. December 2d Bowen went to Forrest City where counterparts of the November 15th proposal had been left with Mann & McCulloch. Bowen procured two copies, took them to West Memphis, and left them with Rieves and Smith. Neither of the West Memphis attorneys was in his office at that time, so Bowen dictated to their secretary a memorandum to be executed by Riggan.

The essentials of the December conference are emphasized by the testimony of Riggan when questioned by his attorney, Mr. Rieves:

Question: "Was there a proposal that if you would accept $1,000 for the store fixtures and Mr. Bowen would take $500 from his commission the differences might be adjusted?" A. "Yes, sir." Q. "Did you leave my office and call me by telephone later?" A. "Yes, sir." Q. "What authority did you give me at that time?" A. "I told you that if you thought it was the right thing to do I would go along with it." Q. "On December 5th following Mr. Bowen's visit to my office did you agree to a settlement?" A. "Yes, sir." Q. "Did I at that time dictate to my stenographer an addendum to the contract [of November 15th] and have you sign it?" A. "Yes, and I saw this [addendum] torn loose from the contract of sale."

At this point Mr. Rieves said, "The defendant is not claiming any condition under the contract made on December 2d."

Following the conference to which reference has been made Riggan left, then telephoned Rieves. There is this stipulation: "When the telephone call came to the office of Rieves & Smith in West Memphis, and Mr. Rieves answered, it was Riggan calling, and Riggan said he accepted the proposition made by Bowen for reduction of the commission by $500 and payment of $1,000 for the store fixtures."

Appellee does not contend that through any express language there were any reservations when the substituted agreement was made. His position is that because in the first instance he had stipulated that no deal would be completed unless Woods agreed to it, and because he had this alternative in mind when the Memphis conference was held, and when he telephoned to Rieves, appellant should have understood the tentative nature of their negotiations, hence a question of fact was made for the jury.

It is undisputed that Dr. Hendrix was informed of Riggan's acceptance of the counter offer, and that he un-

conditionally accepted it, while at the same time urging haste because he had to give the prospective farm manager a definite answer regarding employment. When Riggan continued to procrastinate, Dr. Hendrix had his attorneys write that the negotiations were at an end. The letter is dated December 14th, but refers to a conference with Riggan and Rieves held the previous day. At that time Riggan declined to go ahead with the deal without Woods' approval. Woods was on a hunting trip and would not be available for a week. Riggan was notifed December 17th that Dr. Hendrix would not wait any longer.

It will be observed that throughout the testimony the supplemental transaction resulting from the conference of December 1 is referred to by appellee as "addenda." We are in accord with this view. It may be true that Riggan had in mind the condition he had imposed in respect of the writing dated November 15th—the consent of Eugene Woods. But it is stipulated that the final negotiations were without reservations, and certainly Bowen was justified in believing that the objections had been eliminated. In these circumstances there was no substantial testimony upon which the jury could find that appellant had not produced a buyer ready, able and willing to buy.

Since Bowen produced a purchaser ready, willing, and able to buy under a contract accepted without conditions, the commission was earned and appellant was therefore entitled to an instructed verdict.

The judgment must be reversed, with judgment here for appellant. It is so ordered.

Justices HOLT and MILLWEE dissent.