WORTH JAMES *v.* P. B. PRICE CONSTRUCTION Co.

5-3808                                         401 S. W. 2d 206

Opinion delivered April 11, 1966

*Smith, Williams, Friday & Bowen,* By: *Herschel H. Friday* and *James W. Moore,* for appellant.

*Catlett & Henderson,* for appellee.

ED. F. McFADDIN, Justice. This is an action brought by appellee for balance claimed due on a contract. Just

what was the contract between the parties, is the main point of dispute.

Appellant, Worth James (doing business as Worth James Construction Company) obtained a contract to lay certain sewer lines for Base Line Sewer District, and then subcontracted a portion of the work to appellee, Price Construction Company, an Arkansas corporation. After the final completion of the work, Price Construction Company (hereinafter called "Price") filed this action against Worth James for $19,153.89 as balance claimed due under the contract. The defense was that the items sued for were not covered by any contract. Trial to a jury resulted in a verdict and judgment for appellee, Price, for $12,963.43; and this appeal ensued. Appellant lists four points, which we will consolidate into two topics.

I.

In his first point appellant insists that he was entitled to an instructed verdict at the close of all the evidence; and this requires a summary of the evidence.

On January 23, 1963 Worth James entered into a contract with Base Line Sewer Improvement District, whereby Worth James was to construct sanitary sewer outfalls and interceptors and appurtenances for the Sewer District, according to detailed plans and specifications. It was required that Worth James would cut the pavements or surface levels in existing streets and highways, lay the sewer lines, backfill and tamp the trenches, and replace the pavement. We copy a portion of the specifications in this regard, as required of Worth James:

"It is the intent of this specification that the Contractor shall be responsible for all settlement of backfill in trenches occasioned by the work covered herein. He shall refill trenches as often as necessary to bring them back to original grade and during the period when settlement is occurring, shall refill

them frequently enough to maintain traffic without hazard at all times . . . . ''

Worth James furnished to appellee, Price, a copy of the specifications and then subcontracted to Price the cutting of the streets and the replacing of the pavement, roads, and highways, to be done after Worth James had laid the sewer lines and tamped the dirt in the trenches to proper level. That Price did the work efficiently seems to be admitted. Price urges that by the contract it was to be paid its actual cost for any subsequent refilling after the first pavement work, when such refilling was caused by a subsequent settlement of the trench that Worth James had tamped. Worth James denies that Price was to be compensated for any subsequent refillings.

As aforesaid, the real question is what was the contract between Worth James and Price. Since the jury verdict was in favor of the appellee we detail the evidence in the light most favorable to the appellee. *N.Y. Life Ins. Co.* v. *Weeks,* 201 Ark. 1160, 148 S. W. 2d 330; *Peoples Loan Co.* v. *Whittle,* 205 Ark. 35, 166 S. W. 2d 1013; and *Crown Coach Co.* v. *Whittakee,* 208 Ark. 535, 186 S. W. 2d 940.

1. Mr. P. B. Price, President of Price Construction Company, testified that in January 1963 he prepared a pencilled letter on yellow paper to Worth James, giving the offer of Price for performing the subcontract. That pencilled letter is in the transcript and contains these significant paragraphs:

''It is further understood that in the event of settlement or shrinkage of the fill under any cut we will be compensated for the additional base materials and/or surface materials.

''We also agree to carry all forms of insurance and will provide certificates of such.''

2. Worth James held the Price letter for some time, and on May 24th Price caused the said letter to be written on Price stationery and submitted it to Worth James for signing. Mr. Price testified that Worth James did not sign the May 24th letter, as submitted; and that on or about September 23, 1963 Price and Worth James had a conversation in which Worth James stated that he could not agree to the May 24th letter with the above quoted paragraphs in it; and Worth James rewrote the letter, and used this language in lieu of that previously copied:

> "We also agree to carry all forms of insurance, and will provide certificates of such. We agree to furnish performance and payment bond as provided for under the terms of the contract. Also maintenance bond as required by the City of Little Rock."

3. Mr. Price testified that he told Worth James that he could not agree to said letter that Worth James submitted on September 23, 1963; and that he told Worth James that he would take the Worth James letter back to his office and write a supplement to it and then would sign the Worth James letter with the supplement. Mr. Price then wrote Worth James, under date of September 30, 1963, this letter:

"Worth James Construction Company
3312 Fair Park Boulevard
Little Rock, Arkansas

Re: Base Line Sewer District No. 201
(WPC-Ark-107)

"Gentlemen:
"We are returning herewith signed contract in duplicate for street repairs under your above captioned contract.

"These agreements have been executed after our discussion of them today at your office, when para-

graph three on page 2 (which reads, 'We also agree to carry . . . . ' was further clarified, Viz: "1. Instead of providing a performance and payment bond to you, you are to deduct the cost of the bond from our estimates based on the gross amount of said estimates.

"2. You are to furnish maintenance bond to the City of Little Rock and this supplement is to guarantee our work against failure due to workmanship or materials. *Any failures due to settlement is to be repaired at your expense and we hereby agree to perform such work for you at our actual cost.*[1] The Engineer's decision as to settlement or failure due to faulty workmanship or material shall prevail.

> "Yours very truly,
> P. B. PRICE CONSTRUCTION CO.
> P. B. Price, President."

4. The above letter accompanied the letter which Worth James had prepared. Price contends that the said September 30th letter was a part of the contract. Worth James admits receiving the letter dated September 30th; but claims that he paid no attention to it because he had never agreed to its terms and that he was all the time working only under the letter that he had submitted to Price on September 23, 1963.

Thus, the question is whether the contract between the parties was that submitted by Worth James on September 23rd; or whether the contract between the parties was the Worth James letter of September 23rd, *PLUS* the Price letter of September 30th. That contracts can be made by correspondence is recognized in our opinions. *Hart* v. *Hammett Groc. Co.*, 132 Ark. 197, 200 S. W. 795; *Moro Supply Co.* v. *Griffis Co.*, 142 Ark. 231, 218 S. W. 370; *Proctor & Gamble* v. *Goff*, 159 Ark. 292, 251 S. W. 876; *Mechanics Lbr. Co.* v. *Yates*, 181 Ark.

---

[1] The emphasis is our own to direct attention to the real issue before us.

415, 26 S. W. 2d 80; and *Donaghey* v. *Remmel,* 183 Ark. 67, 34 S. W. 2d 1085.

Furthermore, that a party, by knowingly accepting the benefits of a proposed contract, is bound by its terms, is likewise recognized in our cases. *Blake* v. *Scott,* 92 Ark. 46, 121 S. W. 1054. We hold that a question of fact was made for the jury as to what was the contract between the parties. The fact that Worth James never agreed—in the September 23rd conversation—to what is contained in the September 30th letter, is not a sufficient defense; also the fact that Worth James says he did not sign anything agreeing to Price's letter of September 30th, is not a sufficient defense. If Worth James, knowing of the letter of September 30th, accepted the benefits of refilling the sunken trenches, all the time knowing that Price had stated that it was to receive its actual expenses, then Worth James would be bound. It is textbook law that an offer may be accepted by conduct; and whether Worth James accepted by conduct the provisions of the Price letter of September 30th, was a question of fact for the jury. Such was the effect of our holding in the case of *Blake* v. *Scott,* 92 Ark. 46, 121 S. W. 1054. In that case, Blake built a sidewalk and curb for Scott, who refused to pay for the curb, claiming he had contracted only for a sidewalk. Blake sued for the building of the curb. In holding Scott liable for the building of the curb, this Court said:

"When a contract is entered into, it is either express in its terms or its terms may be implied from the acts, conduct and express words of the contract. To form the agreement of the parties, it is essential that there should be a distinct intention that is common to both. But the intention of the parties need not be express; it may be implied from the acts and words used, and the law will impute to the parties an intention which the meaning of their words and acts reasonably import . . . . .

"The defendant Blake requested him to build the

sidewalk, without specifically mentioning the curb or wall; and when, in pursuance of that request, the plaintiff began the work by starting on the curb, the defendant stood by and saw the work of building the curb proceed. He must have known that plaintiff was only doing that work at his request and at the request of and by the direction of no other person or party.''

We find no merit in the appellant's first point.

## II.

Appellant's three remaining points relate to the ruling of the Trial Court in regard to instructions. It would serve no useful purpose to copy the instructions and discuss them. It is sufficient to say that we find no error in the rulings of the Court in regard to these instructions.

Affirmed.