Statement of the Case.
NICHOLLS, J.
The defendant company on June 24, 1902, wrote the plaintiff, through its manager, the following letter:
“Dear Sir: Confirming our verbal offer of
this date we hereby propose to supply your company with all the fuel oil which you may need for the use of your ships in this port for a period of one year from date at the rate of fifty cents (50c.) per barrel, of 42 U. S. gallons, delivered in steamer’s tanks at oil wharf, we to tow your ships from the fruit wharf to the oil wharf and return free of charge to you. You on your part agreeing to buy from us all the fuel oil required by your company at this port during said time.
“It is further agreed and understood that this agreement and price is based on the present existing conditions of the oil wells at Beaumont, Jefferson County, Texas, and should the oil wells there cease to gush oil, then and in that event, this agreement and price to be modified and changed to meet the new conditions, as may be mutually agreed upon between us.
“Very respectfully yours,
“Louisiana Petroleum Company.
“[Signed] Chas. G. Coyle, President.”
*105 To which' the following reply was made:
“Charles G. Coyle Esq., President La. Petroleum Company — Dear ' Sir: In . reply to your favor of the 24th instant I have to advise that we hereby accept your offer to supply us with fuel oil for the use of our ships in this port for a period of one year at the rate of 50c. per barrel of 42 U. S. gallons, delivered in steamers tanks at oil wharf, you agreeing to tow our ships from the fruit wharf to the oil wharf and return, free of charge, and will consider this exchange of letters between us as a binding contract, for a period of one year from date. I also agree to the other terms and conditions expressed in your letter regarding the condition of the oil wells, but do not think we will have any trouble on this point, as I understand the cost of pumping if necessary, will be a very small item.
“Yours truly,
“[Signed] C. H. Ellis, Manager.”
Plaintiff in this suit seeks to recover from the defendant $12,694 and interest on the ground that about the 5th day of January, 1905, the defendant, without cause or legal excuse, and in breach and violation of its contract, repudiated the same, and refused to make further deliveries to it of fuel oil thereunder at the price agreed on, and had ever since so declined, notwithstanding it duly and seasonably demanded performance.
That in consequence of said repudiation it had, for the purposes of its business, been forced to purchase large quantities of oil from other parties at higher prices, and had thereby sustained damage for the difference.
The district court rejected plaintiff’s demand, and it has appealed.
In his reasons for judgment the district judge assigned the following reasons:
“The only real, issue herein is the interpretation of a certain clause entered into by defendant for supplying plaintiff with fuel oil.
“The contract consists of a written offer by defendant and an acceptance in writing by plaintiff, in which occurs this language, viz.:
“In the offer: ‘It is further agreed and understood that this agreement is based on the present existing conditions of the oil wells at Beaumont, Jefferson County, Texas, and should the oil wells there cease to gush oil, then and in that event, this agreement and price to be modified and changed to meet the new conditions, as may be mutually agreed upon between us;’ and in the acceptance: T also agree to the other terms- and conditions expressed in your letter regarding the conditions of the oil wells but I do not think we will have any trouble on this point, as I understand the cost of pumping if necessary, will be a very small item.’
“I am not of the opinion that what follows after the words ‘wells’ where last quoted forms any part of the acceptance, being _ merely the expression of a belief as to the likelihood of some future event, and giving a reason for the belief, but neither adding to nor detracting from the meaning of the language in the offer, the very terms of which make it clear that defendant also anticipated no difficulty . in the making of a new agreement, and for a like reason (as the evidence shows); for it appears that both parties were at the time practically of the same belief, viz., that the most likely effect of the happening of the contingency provided against would be to increase the price of oil by just the cost of pumping, which in all probability would be slight.
“Now, the offer containing the clause in dispute was for a supply of oil for a year from its date, but when little more than half that time had elapsed the wells ceased to gush oil.
“Thereupon the parties were unable to agree at once upon a new arrangement, and the defendant asserted and exercised the right to cease supplying oil under the contract, claiming that by the terms of its offer its obligation to do so ceased upon the mere happening of the contingency.
“Hence this controversy, for plaintiff claimed, and now urges, that by the terms of the contract defendant was not discharged by the simple happening of the contingency, but that it continued obligated until new arrangements had been made, and, as no new arrangements were ever entered into, this suit is now brought to recover the difference between the contract price and the market price paid for the oil purchased by plaintiff during the remaining term of the contract. To me the interpretation placed upon this clause by the defendant appears to be the correct one.
' “The parties anticipated a change in conditions, and provided for a corresponding change in the contract. ‘Then and in that event this agreement and price to be modified and changed to meet the new conditions, as may be mutually agreed upon between us,’ is the language used.
“To my mind this conveys the idea of an unconditional provision that there shall be a change. The language is direct and positive— ‘this agreement be changed’; and the added words ‘as may be mutually agreed upon’ have not the same meaning as if written ‘if mutually agreed upon.’ Let the words be placed in juxtaposition, and the wideness of the difference at once appears. Thus ‘to be changed as may be mutually agreed upon’ and ‘to be changed if mutually agreed upon’ both make perfect sense, but they differ radically in their meanings. Now, change means substitution, and the substitution of one contract for another abrogates the first; so a provision that a contract shall be changed is a provision that it shall be abrogated.
*106 “So much for technical analysis of the language. -Let us, however, look at the matter from a broader standpoint.
“The language we seek to interpret was used by defendant, and manifestly intended for its own protection. That protection was sought not against the contingency itself, but against claims that plaintiff might urge against it.
“Now, there were but two things that defendant might have meant by this language— either that it intended in that event no longer to be under obligation to plaintiff to carry out the contract, or that it meant in that contingency to rely upon the good will and sense of fairness of plaintiff. The language is incapable of any other meaning. There is no middle ground possible.
“But it is hardly a question what defendant had in mind; and the very fact that plaintiff looked upon the clause as another ‘condition’ of the contract, out of which ‘trouble’ might arise (though not probably), and yet ‘accepted’ the same, leaves but little room to doubt in what sense even plaintiff then. understood it. Finally, and independently of these considerations, the language of the contract seems quite plain and unambiguous to me; and, but for the very able argument and brief of counsel for plaintiff, I should not have conceived it possible to view it otherwise. I do not, however, pretend that in this I may not be mistaken.
“There will be judgment rejecting plaintiff’s demand at its costs.”
Opinion.
We think that the district court construed correctly the agreement of the parties, and that by its judgment the rights were justly determined. We are of the opinion that the plaintiff and the defendant both understood and consented that the contract which they entered into should, under all circumstances, be modified in the event that the wells at Beaumont should cease to gush, so as to make it conform to existing conditions. It was, however, hoped and expected and consented to that the particular modification which would be made would be reached and accomplished through an agreement to be made thereafter between them. The contingency. on which the modification was to be made having occurred, an unsuccessful attempt was made to come to an agreement, and, as a consequence, the business relations between them came to an end. Plaintiff seeks through this suit to substitute a judicial contract for the conventional one which the parties failed to make. The courts cannot make a contract for them.
Plaintiff says that it was the duty of the defendant to have made the terms of the agreement plain. We think that it was plain, and that, if there be any ambiguity about it, it results from the answer given to plaintiff’s proposition. The acceptance of a proposition must conform to the offer, or there is no contract. We do not understand the answer which was made was intended as a departure from the terms of the proposition itself.
We are of the opinion that the judgment appealed from is correct, and it is hereby affirmed.