## CAGE *v.* BLACK.

### Opinion delivered February 13, 1911.

1. SALES OF CHATTELS—MUTUAL ASSENT.—In order to constitute a binding contract of sale, there must be a mutual assent of both parties to the essential terms of the agreement. (Page 617.)

2. SAME—FORM OF CONTRACT.—A binding contract of sale may be entered into by letters and telegrams. (Page 617.)

3. SAME—MEETING OF MINDS.—Where the parties to an alleged sale were mutually mistaken as to the price at which the article was offered and accepted, the sale was not consummated, because their minds did not meet upon an essential element thereof. (Page 618.)

4. SAME—MEETING OF MINDS.—Plaintiffs wired defendants to "name price on carload Honduras rice." Defendants wired: "Have 200 sacks left, second year, highly graded, $5.75 f. o. b. here." The next day plaintiff wired: "Ship 170 sacks rice. Instructions in letter." On same day plaintiffs wrote verifying telegram and adding: "You understand this is all Honduras rice, second year, highly graded, at $5.75 per sack." On same day defendants wrote: "In accordance with telegrams exchanged between us, we confirm sale to you 170 sacks Honduras seed rice, highly graded, at $5.75 per barrel." Proof was offered by defendants that the unit of measurement in the rice trade is a barrel of 162 lbs., but it was not shown that this custom was general or that it was brought to plaintiff's notice. *Held,* that there was no meeting of minds as to the price. (Page 618.)

5. SAME—MUTUAL ASSENT.—Where a purchaser accepts the property sold, knowing that the vendee is demanding a certain price, and pays for it, he will be held to have agreed thereto. (Page 620.)

Appeal from Monroe Circuit Court; *Eugene Lankford,* Judge; reversed.

*Manning & Emerson,* for appellants.

When appellees paid the draft and accepted the rice from the railroad company under the bill of lading which specified the amount which should be paid, this was an acceptance of the rice upon the terms then offered by appellants, and this formed the contract between the parties. 9 Cyc. 260; *Id.* 245.

*C. F. Greenlee,* for appellees.

Appellants' offer was *sacks* of rice at $5.75 per sack, and appellees' acceptance was of *sacks* of rice at that price. There is no ambiguity in the telegrams and letters on this point. The court's finding of facts from the evidence submitted to it is conclusive. 68 Ark. 83; 70 Ark. 512.

In the state of case presented appellants can not claim that the minds of the parties did not meet, and that, therefore, there was no contract. 9 Cyc. 252. It being the duty of appellees to lessen the damages sustained, if any, by taking the rice, and, it being necessary, in order to do so, to pay the draft, this payment, being under protest, did not constitute a waiver by appellees of the right to recoup. 9 Cyc. 462; 54 L. R. A. 718, note; 46 Kan. 192; 81 Ga. 104; 55 N. Y. 664; 108 N. Y. 542.

To hold that the payment of the draft under protest and under the circumstances of this case meant that a new contract for the purchase of the rice was made would be equivalent to holding that any shipper could vary the terms of his contract as to price by simply raising the price of the article sold without the consent of the purchaser.

*Manning & Emerson,* for appellants in reply.

The most favorable view in favor of appellees that can be taken of this case is that they *understood* that they were buying the rice at so much *per sack;* but appellants *understood* that they were selling at so much *per barrel.* There was no meeting of the minds of the parties until the appellees accepted the rice knowing the price demanded by appellants. 11 L. R. A. 254; 111 N. W. 1097.

FRAUENTHAL, J. This was an action instituted by J. T. Black and others as partners, the plaintiffs below, to recover an amount which they had paid to defendants, under protest, in excess of the sum that was due for the purchase money of a ship-

ment of rice which it was alleged they had purchased from them. The plaintiffs resided at Brinkley, Arkansas, and the defendants were dealers in rice, residing at Houston, Texas. The plaintiffs, learning that defendants were engaged in the business of selling rice, sent to them a telegram on March 5, 1909, in which they asked them to "name price of carload Honduras rice." On the same day the defendants replied by wire from Houston, as follows: "Have 200 sacks left, second year, highly graded, $5.75, f. o. b. here. Wire quick. Very scarce." On March 6, 1909, the plaintiffs, learning that a sack of rice contained four bushels, and that it required 170 sacks containing four bushels each for their purposes, sent the following telegram to defendants: "Ship one hundred and seventy sacks rice. Instructions in letter." On the same day plaintiffs wrote a letter to defendants in which they stated they had received defendants' telegram, and had answered by wire for them to ship 170 sacks and to wait for letter. In this letter they also stated that they preferred that shipment be made about the 15th of March; and also stated: "You understand this is all Honduras rice, second year, highly graded, at $5.75 per sack. Make sight draft on us, bill of lading attached, through Monroe County Bank, Brinkley, Arkansas."

On the same day, March 6, defendants wrote to plaintiffs as follows: "In accordance with telegrams exchanged between us, we confirm sale to you 170 sacks Honduras seed rice, highly graded, at $5.75 per barrel." And on March 8 defendants wrote to plaintiffs as follows: "Respecting your appreciated favor of the 6th, we note your instructions to ship you 170 sacks Honduras rice to Forrest City about March 15. The same will have our best attention." On receipt of the above letter from defendants stating they confirmed sale to plaintiffs of 170 sacks of rice at $5.75 per barrel, the plaintiffs at once wrote to defendants stating in substance that they were not familiar with the rice business and did not know what a barrel meant, and presumed that barrels and sacks meant the same. To this letter the plaintiffs testified they received no reply. On March 17, 1909, the defendants delivered the rice to a common carrier at Houston consigned to Forrest City, and the bill of lading therefor was attached to a draft on plaintiffs for $1,214.44 and sent to the bank at Brinkley, Arkansas, with instructions to turn same over to

plaintiff on payment of draft. Accompanying the draft the defendants sent an invoice or bill as follows: "170 sacks Honduras seed rice 31,590 lbs., equal 195 bbls., at $1,121.25. Freight prepaid at 29½c. per 100 lbs."

On March 19 the plaintiffs wrote to defendants as follows: "Your bill for 170 sacks of Honduras rice received today, and was much surprised to find it carried out 195 barrels, at $5.75 per barrel. Your telegram stated you had '200 sacks of rice left. highly graded, at $5.75 f. o. b. here. Wire quick. Very scarce.' We were all present when the telegram came, and, not knowing anything about barrels of rice, figured the cost of this rice per sack at $5.75, and wired you for 170 sacks. In confirmation to this, you speak of 170 sacks at $5.75 per barrel. In my reply to this I stated to you that I was not familiar with rice terms, but presumed that sacks and barrels meant the same. Consequently was expecting sacks and not barrels. Now, if you can make any explanation why we are required to pay for 195 barrels at $5.75, instead of 170 sacks, at $5.75 per sack, as per your telegram, I would be glad to hear from you at once. Your draft with b. l. attached is now at our bank, and the money is there ready to pay same as soon as we know the facts in the matter. However we feel that we ordered and bought 170 sacks at $5.75 per sack, the price of which is $977.50, while you have made the total price to be $1,121.25, making a difference of $143.75, which we think is error."

On March 22, 1909, the defendants sent telegram to plaintiffs as follows: "Rice sold by barrel, 162 pounds each; sacks do not run uniform; rate Forrest City 29½," and on the same day wrote to them that their quotations were based at all times on a certain price per barrel. Some further correspondence passed between the parties in which the plaintiffs claimed that they had bought the rice at $5.75 per sack and the defendants insisted that they had sold the same at $5.75 per barrel of 162 pounds. On April 9, 1909, the plaintiffs went to the bank at Brinkley, and paid off the draft in full, and took up the bill of lading, and received the possession of the rice thereunder. On the same day they instituted this suit against the defendants for $164, same being for the difference between the price of the rice at which they claimed to have bought and the amount they were

required to pay on the draft in order to get possession of the rice, and also for an alleged overcharge on freight.

The defendants introduced testimony tending to prove that, according to the custom of the trade in buying and selling rice in Texas and Houston, rice of the kind sold to plaintiffs was invariably sold by the barrel of 162 pounds each, and that it is the custom in quoting the price on such rice by wire to state the amount of the price, without stating the unit of measurement upon which the price is based; but we do not think that it was proved that this custom was in existence a sufficient length of time to have become generally known; at least, there was not sufficient testimony on this point to override a finding of the trial court to the contrary. Upon the trial of the case the plaintiff, Black, who carried on all the above negotiations with defendants, was asked if he did not know, before he paid the draft with the bill of lading attached, that the defendants were expecting the plaintffs to pay $5.75 per barrel for the rice; and to this he answered that he "certainly did."

The case was tried by the lower court sitting as a jury, and the defendants asked that it make certain findings of fact and declarations of law in their favor, all of which were refused. The court thereupon made a finding that a contract was entered into between plaintiffs and defendants by which defendants sold to plaintiffs the rice at $5.75 per sack f. o. b. the cars at Houston, and that they were entitled to recover the difference between the cost of the rice at that price and its cost at $5.75 per barrel as charged by defendants in their invoice and draft which plaintiffs under compulsion paid in order to get possession of the rice. It found that this difference amounted to $143.75, and entered judgment in favor of plaintiffs for that amount. From that judgment defendants have appealed to this court.

The controlling question involved in this case is, when was the contract for the sale of the rice actually entered into by the parties? In order to constitute a binding contract of sale, there must be a mutual assent of both parties to the essential terms of the agreement. Mere negotiations between the parties as to the subject-matter or terms of the sale will not

be sufficient to make a binding contract. A binding contract of sale may be entered into by letters and telegrams, and so an acceptance by letter or telegram of an unconditional offer made in the same manner will constitute an obligatory contract. *Emerson* v. *Stevens Gro. Co.,* 95 Ark. 421. The offer of the one represents the agreement on his part, and the acceptance of the other party represents his agreement; but, before the contract is consummated, each party must agree to the same proposition, and the agreement of both must be mutual to every essential term of the contract. There is no obligation until an offer expressing the terms of the sale has been made and also an acceptance thereof in accordance with such terms.

The Supreme Court of the United States has thus stated the doctrine: "It is an undeniable principle of law of contracts that an offer of a bargain by one person to another imposes no obligation upon the former until it is accepted by the latter according to the terms in which the offer was made. Any qualification of or departure from these terms invalidates the offer unless the same be agreed to by the person who made it. Until the terms of the agreement have received the assent of both parties, the negotiation is open and imposes no obligation upon either." *Eliason* v. *Henshaw,* 4 Wheat. 228; *Carr* v. *Duval,* 14 Pet. 77.

One of the essential elements of a contract of sale is the price, and, in order to constitute a sale, the price must be agreed upon. As is said in Tiedeman on Sales, § 45: "So important an element of a sale is the price that a failure to stipulate or agree upon the price will always prevent the completion of the sale." 1 Mechem on Sales, § 209; Benjamin on Sales, § 69. Before there could have been a completed contract of sale in the case at bar, the offer to sell and the acceptance thereof must have been made upon the same price. If the parties were mutually mistaken as to the price at which the article was offered and accepted, then the sale was not consummated, because their minds did not meet upon this essential element thereof. As is said in 35 Cyc. 62: "If the offer is stated in such terms that the offeree understands one price, while the offerer means another, the parties are never *ad idem,* and there is no agreement." 1 Mechem on Sales, § 278.

It is contended by the defendants in the case at bar that,

according to the custom of the trade in buying and selling rice, the unit of measurement upon which the price is based is the barrel of 162 pounds, and that therefore when they, on March 6, made by telegram the offer to sell the rice at $5.75, it necessarily meant that sum per barrel. On the contrary, the plaintiffs contend that on receipt of the telegram from defendants stating that they had 200 sacks of rice at $5.75 they made inquiry and learned that a sack contained four bushels and accepted 170 sacks, understanding that it was at the price of $5.75 per sack. We do not think that the offer can be construed, as a matter of law, to make the price at $5.75 per barrel, for the reason that the alleged custom of selling this article upon that unit of measurement as the basis of the price was not by the testimony shown to have existed for a sufficient length of time to have been generally known. *Merchants Gro. Co.* v. *Ladoga Canning Co.*, 89 Ark. 591. Nor do we think that the plaintiff's acceptance by wire can be construed to have made the price at $5.75 per sack, for the reason that it does not distinctly state the price on that basis. Their telegram requested defendants to ship 170 sacks of rice, and its evident intention was to purchase it at the price named by defendants. But defendants had not quoted the price at $5.75 per sack. They stated in their telegram that they had 200 sacks of rice, and named the price at $5.75; but this can not be construed to mean at $5.75 per sack when it does not distinctly state that the quotation was based on the sack as the unit of measurement. In naming the number of sacks they only stated the quantity of rice which they had on hand. It was the same as if they had stated that they had a carload or ton of rice; and if they had done that and quoted the price at $5.75, it could not be said that they meant at that price per carload or per ton. The telegrams show clearly that the parties intended to actually name a price, and the law therefore will not import a price therein. The parties did not in definite terms expressly name the price, but each understood the price differently. The parties were in good faith mutually mistaken as to the price at which the one offered the article and the other accepted it, and they therefore did not agree upon this essential element of the contract. The sale was not consummated on this account when plaintiffs sent the telegram of March 6 accepting the 170 sacks.

On March 6 the plaintiffs sent a letter to the defendants in which they definitely stated that they were buying at $5.75 per sack, and on the same day defendants sent a letter to plaintiffs definitely stating that they were selling at $5.75 per barrel, and these letters were received by the respective parties about the same time. They then knew that there was a mutual misunderstanding as to the price of the article. All correspondence from that time until the shipment constituted only negotiations, and not a contract, because there was at that time no express or implied assent by the parties to the same price, and therefore neither was obligated thereby. On March 17 the defendants shipped the rice, taking bill of lading therefor and attaching same to draft, which they sent to a bank at Brinkley with instructions to turn same over to plaintiffs only on payment of the draft. At the same time they sent an invoice and bill of the rice to plaintiffs, in which it was shown that the rice was sold or offered at $5.75 per barrel. The amount of the draft and an inventory accompanying it showed also that this was the price at which defendants then offered or sold the rice to plaintiffs. Up to that time there was no mutual assent of the parties to the price, and therefore up to that time there was no sale. Neither party up to that time was obligated by any or all of the telegrams or letters that had prior to that time passed between them because these amounted simply to negotiations looking to an assent by both parties to a price. When, therefore, the bill of lading was presented by the bank at Brinkley to plaintiffs with the invoice of the rice attached, showing that it was offered at the price of $5.75 per barrel, the plaintiffs had the right to pursue one of two courses; either to take the rice upon the terms at which it was then offered, or to refuse to purchase it. Having taken the property, knowing that the defendants were demanding therefor the price named in their bill, the plaintiffs thereby became bound for the rice at that price. As is said in the case of *Estey Organ Co.* v. *Lehman,* 11 L. R. A. (N. S.) 254: "The defendants having received and retained the property with knowledge of the price plaintiffs expected to receive, and without any agreement, express or implied, for a different price, they can not escape payment of the price stated in the invoice."

The court therefore erred in finding that there was a binding

contract of sale of the rice entered into between the parties prior
to the receipt of the bill of lading by plaintiffs and their payment
of the draft therefor, and in rendering judgment against de-
fendants. The judgment is accordingly reversed, and the cause
dismissed.