SOUTHERN ACID & SULPHUR COMPANY *v.* CHILDS.

4-7498                                    184 S. W. 2d 586

Opinion delivered January 8, 1945.

*D. A. Bradham,* for appellant.

*C. C. Hollensworth,* for appellee.

MILLWEE, J. Appellant, Gate City Fertilizer Company, (a division of Southern Acid & Sulphur Company, Inc.) of Little Rock, Arkansas, brought this action in the Bradley circuit court for recovery of a balance alleged due it by appellee, R. W. Childs of Warren, Arkansas.

The suit was predicated upon a written contract executed February 19, 1938, by J. H. Hunter, representing appellant, and appellee, Childs, at Warren, and was confirmed two days later by E. E. Newhouse, sales manager of appellant at Little Rock. By the contract, appellee became the agent of appellant for the sale of its fertilizer products in Bradley county. Fertilizer was sold to appellee by the company and hauled and resold by appellee to others. Appellee collected from such purchasers and paid the company the amount at which the fertilizer was billed to him, less his commission and certain allowances. The contract, in which appellant was referred to in the first person and appellee in the second person, contained the following provisions:

"We will from time to time designate in written or printed forms, the prices, terms, commissions and discounts that shall be in force under this agreement, all and each of which shall be subject to change by us from time to time upon written or printed notice to you.

"This agreement shall remain in effect until canceled in writing at any time, by wire or letter, either by you or us.

"No modification of this contract shall be binding upon us until such modification is confirmed in writing by one of our duly authorized officers. . . ."

Appellee sold the products of appellant during the seasons of 1938, 1939 and 1940 without any disagreement between the parties as to. prices or allowances under their contract. On January 15, 1941, appellant furnished appellee a printed list of prices and allowances to its agents for that season. In this list a price of $30 per ton was quoted on "4-8-6 fertilizer" which was the leading type sold by appellee. From March 3d to April 30, 1941, appellee purchased fertilizer in the net sum of $4,992.70, after allowances in the form of commissions, trucking and freight were deducted in the sum of $1,390.30 as provided in the terms of the printed list. Nineteen payments for a total of $4,500 were made by appellee upon this 1941 account, the first being a payment of $400, April

7, 1941, and the last a $50 payment of May 3, 1943, leaving a balance of $492.70 which appellant alleged was due.

Appellee, in his answer, denied the account and asserted that any business he had done with the plaintiff "was under a new contract with said plaintiff, and that under said new contract he has done and performed each and every obligation."

The cause was tried to a jury. At the conclusion of all the testimony, appellant requested an instructed verdict in its favor, which request was overruled, and a verdict returned for appellee, upon which judgment was rendered.

There is no dispute between the parties as to the amount of fertilizer received, or cash payments made, by appellee. Appellee contends, however, that he made a new oral contract with appellant's representative, J. H. Hunter, on April 1, 1941, whereby it was agreed that the price of 4-8-6 fertilizer was reduced from $30 to $27.60 per ton, and, when the amount of fertilizer he bought at the cheaper price under this alleged agreement is credited to his account, he has paid appellant all he owed it.

We think the contention of appellant, that the trial court erred in refusing to direct a verdict in its favor at the conclusion of all the testimony, should be sustained. In determining whether the evidence was sufficient to take the case to the jury, we must view it in the light most favorable to appellee, and, if there is substantial evidence to support the verdict, it must be sustained. *Missouri State Life Insurance Co.* v. *Holt*, 186 Ark. 672, 55 S. W. 2d 788; *Tri-State Transit Co.* v. *Miller*, 188 Ark. 149, 65 S. W. 2d 9, 90 A. L. R. 1389; *Safeway Stores* v. *Mosely*, 192 Ark. 1059, 95 S. W. 2d 1136.

Appellee testified that on or about April 1, 1941, the F. S. A. let a contract for 400 tons of "4-8-6 fertilizer," and appellant's representative, J. H. Hunter, told him to bid $27.90 per ton, but "don't go under that." He further testified that he became the successful bidder at $27.60 per ton instead of $27.90, and Hunter said "you have to

go to Little Rock before you can get any of our fertilizer." Appellee says he talked with Mr. Newhouse in Little Rock who told him that they were not going to cut the price of fertilizer, if they could help it, and appellee then said "if none of the rest of them cut the price, I won't." He went back to Warren and found others selling fertilizer at $27.60 per ton. He also testified that he always settled with appellant at the prevailing prices of fertilizer in Bradley county, but there is no testimony in the record that other settlements were made that did not conform to the printed price lists sent out by appellant. Appellee did not dispute the account until after the date of his last payment on May 3, 1943.

Assuming, without deciding, that J. H. Hunter had authority to make a new contract with appellee, we think there was an absence of substantial evidence that a definite agreement was reached by the parties to change the price of "4-8-6 fertilizer" from $30, as provided in the printed list, to $27.60 per ton. The general rule is stated in 17 C. J. S., Contracts, § 374, p. 859, as follows: "While a provision in the contract as to the method of change is not exclusive of other methods of modification, the new agreement must have all the requisites of a valid and enforceable contract, and mere indefinite expressions are not sufficient."

Applying this principle to the testimony in this case, we are forced to the conclusion that only indefinite expressions were used by the parties which were insufficient to establish a binding and valid agreement to change the formal requirements of their written contract. We are mindful of the principle that a written contract may be modified or substituted by a subsequent oral agreement, but the burden is upon the party asserting the subsequent modification to show the assent of the other party thereto. *A. G. Brown & Company* v. *McKnight,* 118 S. W. 409.

As is stated in 12 Am. Jur. 1005: "Moreover, the assent of both parties to a modification is necessary. Such consent is required to vary a contract as much as to

make one originally. The mental purpose of one of the parties to a contract cannot change its terms." And, in the case of *Dukes* v. *Cohen,* 192 Ark. 96, 90 S. W. 2d 230, this court, quoting from the case of *Smith* v. *School District No. 89,* 187 Ark. 405, 59 S. W. 2d 1022, said: "It is elementary law that, where a party submits an offer of a contract, this offer must be accepted without reservation. Any reservation or limitation in the acceptance in law is a rejection of the offer." In the case of *Cage* v. *Black,* 97 Ark. 613, 134 S. W. 942, this court said: "The offer of one represents the agreement on his part and the acceptance of the other represents his agreement; but, before the contract is consummated each party must agree to the same proposition, the agreement of both must be mutual to every essential detail of the contract."

Other questions involving the admissibility of certain evidence and the instructions of the court are raised in the briefs of counsel, but we deem it unnecessary to discuss these, since we have reached the conclusion that the court erred in refusing to direct a verdict for appellant at the conclusion of all the testimony in the case.

This cause is reversed and judgment will be entered here in favor of appellant against appellee in the sum of $492.70 with interest at the rate of six per cent. from the 15th day of February, 1944, until paid.

Mr. Justice HOLT disqualified and not participating.