WHEELING DOWNS RACING ASSOCIATION, *a corporation*

*v.*

WEST VIRGINIA SPORTSERVICE, INC., *a corporation, et al.*

(No. 13217)

Submitted May 8, 1973.          Decided June 19, 1973.

Rehearing Denied October 8, 1973.

*Pietranton & George, Frank A. Pietranton, McCamic, McCamic & Hazlett, Jeremy C. McCamic* for appellant.

*Galbraith, Seibert & Kasserman, Ronald W. Kasserman* for appellees.

BERRY, PRESIDENT:

This is an appeal by Wheeling Downs Racing Association, hereinafter referred to as Wheeling Downs, from a final order of the Circuit Court of Ohio County entered August 20, 1971 wherein the Circuit Court held that certain instruments entered into between Wheeling Downs and West Virginia Sportservice, Inc., hereinafter referred to as Sportservice, on December 13, 1957 were valid and binding leases and agreements and further enjoined Wheeling Downs from interfering in any way with Sportservice's exclusive right to provide the services described in the 1957 instruments. Wheeling Downs contends that the agreements are void because of a lack of mutuality and contends that even if they were valid and binding, the lower court erred in disregarding the mandatory arbitration provision of the instruments. Wheeling Downs also contends the court erred in issuing an injunction against Wheeling Downs without holding an evidentiary hearing. This Court granted the appeal on June 6, 1972 and the case was submitted for decision on May 8, 1973 upon the arguments and briefs on behalf of the respective parties.

It appears from the record in this case that Wheeling Downs and Sportservice executed six instruments on December 13, 1957 which basically gave Sportservice the exclusive right for the operation of the food concession, the parking areas, and the selling of programs at the track. Each of the three operations was governed by two instruments, one of which was called a lease and the other

an agreement. This arrangement apparently operated satisfactorily until December, 1962 when a fire destroyed the grandstand and the clubhouse at Wheeling Downs. Prior to the fire Sportservice operated two kitchens in the clubhouse which served two dining areas, six concession stands in the grandstand, and a track kitchen and dining area for the use of the track employees.

After the fire, no racing was held at Wheeling Downs for the next five years. However, by January, 1968 Wheeling Downs had constructed a new structure which was completely enclosed. Wheeling Downs offered a kitchen area and dining area to Sportservice and asked Sportservice to provide food service. Sportservice replied that the area was not large enough to serve a sufficient number of patrons to justify the installation of the equipment which would be necessary to provide the type of service that Wheeling Downs wanted. The vast correspondence in the record between the parties between 1968 and 1970 reveals that Wheeling Downs wanted Sportservice to provide service that was different in some respects because of the structural changes in the new building. However, Sportservice provided only a limited menu during the racing meets in 1968 and 1969 which consisted primarily of sandwiches and beverages. Sportservice refused to expand the menu to include full meals contending that because of the lack of service area it would not be feasible economically.

Finally, in December 1969, Wheeling Downs informed Sportservice that Wheeling Downs considered the concession instruments terminated and informed Sportservice that Wheeling Downs was going to install the necessary kitchen equipment and would operate the kitchen and dining areas itself. Immediately thereafter, Wheeling Downs instituted an action for declaratory judgment in the Circuit Court of Ohio County contending that the court should rule that the 1957 instruments were not binding upon the parties. Sportservice counterclaimed and asked for injunctive relief and that Wheeling Downs

be required to specifically perform the agreements. The Circuit Court held the agreements were valid and binding and enjoined Wheeling Downs from interfering in any way with Sportservice's rights under the agreements.

The main issue in the case at bar is whether the instruments or agreements involved are binding on the parties at the present time.

The six instruments, all of which were executed on December 13, 1957, were all related to various commercial operations at the Wheeling Downs track in Wheeling, West Virginia and were considered as one instrument and construed together by the trial court, apparently with the consent of the parties. The instruments were considered valid and binding by the parties from December 13, 1957 until December, 1962, when the fire destroyed the grandstand and clubhouse at Wheeling Downs. The parties did not operate under the instruments for a period of five years, during which time there was no racing at Wheeling Downs. The grandstand was rebuilt in 1967 with different structural changes being made. After the grandstand was rebuilt the parties were unable to agree on the type of food service that would be available to patrons. Sportservice refused to serve hot food and dinners in that area because, it contended, the area was too small for profitable service. Wheeling Downs insisted on such service and contended the area was adequate. After considerable negotiations between the parties, Wheeling Downs, under a provision in the concession instrument, notified Sportservice that the leases and agreements were terminated and that it was going to install the necessary equipment to operate the dining area and serve hot food in the area Sportservice would not agree to service.

Wheeling Downs contends that the trial court erred in not holding an evidentiary hearing and in not allowing the matter in controversy to be submitted to arbitration as provided in section 25 of the instrument. However, the record does not indicate that any witnesses testified on

behalf of either party with regard to the matters in dispute and no ruling was contained in the record on any request for such evidence or any request for arbitration. This Court will not consider questions, nonjurisdictional in their nature, which have not been acted upon by the trial court. *Cook v. Collins*, 131 W.Va. 475, 48 S.E.2d 161; *In Re: Nicholas Estate*, 142 W.Va. 80, 94 S.E.2d 452; *Western Auto Supply Co. v. Dillard*, 153 W.Va. 678, 172 S.E.2d 388.

The disposition of the case at bar rests on a provision in section 2 of the concession agreement, which was incorporated in the concession lease, in the following language:

> "It is further agreed however, that if by virtue of structural improvements, changes and/or additions by Owner to premises or otherwise, Owner requests of Concessionaire performance of a type, nature or extent of service or operation unusual or different from present operations, then and in that event Concessionaire may within its option, elect to perform such different or unusual services, the same however to be *upon terms and conditions to be mutually agreed upon.*" [Emphasis supplied.]

There is no question that after the fire occurred there were changes made in the structure of the building served under the original agreement, and as a result Sportservice, by necessity, was to provide service different from that originally performed. There is no question that Sportservice did not agree to perform such service and entered into negotiations with regard to terms and conditions for such services, which never were agreed upon. It is clear that the provisions of the original agreement required the parties in such case to mutually agree upon the terms and conditions of this "different service".

This clause in the agreement provides for a modification of the agreement, and the modification of any contract is as much a matter of the contract as the original

agreement. *Main Street & A.P.R. Co. v. Los Angeles Traction Co.*, 129 Cal. 301, 61 P. 937. A modification of a contract requires the assent of both parties to the contract and mutual assent is as much a requisite element in effecting a contractual modification as it is in the initial creation of a contract. 17 AM. JUR. 2d, *Contracts,* § 465; *Keco Industries, Inc. v. ACF Industries, Inc.*, 316 F.2d 513; *Southern Acid & Sulphur Co. v. Childs*, 207 Ark. 1109, 184 S.W.2d 586.

The original contract may provide for modifications and subsequent changes. 17 AM. JUR. 2d, *Contracts,* § 465. It has been held that where changes are made pursuant to a provision in a contract the contract so changed is subject to the same legal requirements as the original contract and such changes must be mutually agreed upon. *Snow Mountain Water & Power Co. v. Kraner*, 191 Cal. 312, 216 P. 589; *Hannagan v. Feather River Pine Mills, Inc.*, 121 Cal. App. 2d 758, 264 P.2d 159.

It is elemental that all contracts must be made by a mutual agreement or a meeting of the minds of the parties involved. This principle is succinctly stated in point 1 of the syllabus in the case of *Martin v. Ewing*, 112 W.Va. 332, 164 S.E. 859, wherein it is stated: "A meeting of the minds of the parties is a *sine qua non* of all contracts." It was held in the case of *United Fruit Co. v. Louisiana Petroleum Co.*, 115 La. 181, 38 So. 958, that where the contract itself contained a provision for modification such modification must be mutually agreed upon by the parties and if the parties cannot agree the court cannot make a new contract for them. A new agreement made under the provisions for modification in a contract must have all of the requisites of a valid and enforceable contract or it will not be binding. 17A C.J.S., *Contracts,* § 374.

The original agreement contained a provision for a modification of the agreement in case of a change in the premises, or otherwise, and if Sportservice elected to perform the different services, such services were to be

upon terms and conditions to be mutually agreed upon. Structural changes were made in the new building, and thus, by necessity, different services were requested to be performed of Sportservice by Wheeling Downs and no mutual agreement was ever reached with regard to the performance of such services. In fact, the record indicates that there was sharp disagreement between the parties over such services. Therefore, there was no valid enforceable contract between the parties after the change and the court cannot make a new contract for the parties. *United Fruit Co. v. Louisiana Petroleum Co., supra.*

The six instruments were considered together and construed as one instrument by the trial court, apparently with agreement of the parties. However, the clause in question providing for a modification of the contract by agreement of the parties is contained only in the instruments dealing with the food concession. Although the instruments were made at the same time by the same parties and are all dealing with various commercial operations at Wheeling Downs, the clause in question is not contained in the other instruments dealing with parking and programs. If the instruments were considered separately only the two food concession instruments would be invalidated as a result of 'the modification clause. If the modification had been mutually agreed upon in the food concession instruments, the other instruments would not have been disturbed or changed. 17A C.J.S., *Contracts,* § 379.

Inasmuch as there is no agreement or contract between the parties with regard to the instruments dealing with the food concession, the judgment of the Circuit Court of Ohio County is reversed and the case is remanded to that Court for disposition in conformity with the principles contained in this opinion.

*Reversed and remanded.*

### On Petition for Rehearing

While the prayer of the petition for a rehearing has been denied in the foregoing case of *Wheeling Downs*

*Racing Association, a corporation v. West Virginia Sport-service, Inc., a corporation, et al.,* there appears to be some confusion with the statement in the opinion with regard to the six instruments being construed together as one instrument by the trial court, "apparently with the agreement of the parties". Nevertheless, the opinion clearly states that if the instruments were considered separately only the two food concessionaire instruments with respect to the food concessions in the reconstructed dining facility would be affected by the modifications clause. Moreover, the last paragraph of the opinion states in clear language that there was no agreement or contract between the parties with regard to the instruments dealing with the food concession. Thus, the other instruments were not affected by the clause in the food concession agreement unless there was an actual agreement by the parties to the contrary.